# Court of Appeals
## Tenth Appellate District of Texas

10-24-00014-CR

Juan Manuel Espinoza,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
12th District Court of Walker County, Texas
Judge David W. Moorman, presiding
Trial Court Cause No. 30016

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Juan Manuel Espinoza was charged in a seventeen-count indictment alleging various acts of sexual abuse committed against five different children – "Amy," "Ally," "Rosalinda," "Juana," and "Abby." After a jury trial, Espinoza was acquitted of the five charges allegedly committed against Rosalinda - one count of sexual assault of a child, three counts of indecency with a child by

sexual contact, and one count of indecency with a child by exposure.[1] *See* TEX. PENAL CODE ANN. §§21.11(a), 22.011(a)(2). He was convicted of the twelve charges involving Amy, Ally, Juana, and/or Abby - one count of continuous sexual abuse, two counts of aggravated sexual assault of a child, two counts of sexual assault of a child, four counts of indecency with a child by sexual contact, and three counts of indecency with a child by exposure. *See id*. at §§ 21.02, 21.11(a), 22.011(a)(2), 22.021. In accordance with the jury verdict, Espinoza was sentenced to serve seventy-five years in prison on each first-degree felony conviction, twenty years in prison on each second-degree felony conviction, and ten years in prison on each third-degree felony conviction.

On appeal, Espinoza raises twenty-nine issues challenging the trial court's admission of certain evidence, the sufficiency of the evidence to support eight of his convictions, and the trial court's assessment of fines and reimbursement fees. We modify each judgment of conviction to delete the assessed $100 fine and affirm the judgments as modified.

## Credibility Testimony

In his first issue, Espinoza contends that the trial court erred by admitting testimony from the forensic interviewer regarding Ally and Abby's demeanor and "stage of disclosure" during their forensic interviews. He argues

---

[1] Rosalinda did not testify at trial.

that this testimony was an improper implied comment on Ally and Abby's truthfulness and credibility. We disagree.

We review a trial court's admission of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). While an expert is not permitted to directly comment on a complaining witness's truthfulness, *see Yount v. State*, 872 S.W.2d 706, 711-12 (Tex. Crim. App. 1993), an expert "may testify to events that he has observed, such as the demeanor of a child victim during out-of-court statements." *Schutz v. State*, 957 S.W.2d 52, 70 n. 8 (Tex. Crim. App. 1997).

At trial, the forensic interviewer generally described various "stages of disclosure" that a child may go through when outcrying to sexual abuse. Relevant here, she defined "tentative disclosure" as "when a child tests the waters … [t]entatively saying that something has occurred[,]" and "active disclosure" as when the child "is giving full-on details about something that has occurred." The forensic interviewer described Abby as talking "calmly … very low-voice spoken, soft-spoken" and stated that she eventually started crying. She described Ally as acting in a similar manner, "a bit shy in rapport" and that she became "very quiet, soft-spoken, and was crying." While the forensic interviewer classified Abby to be in "active disclosure" and Ally to be

in "active and tentative" disclosure, she expressly stated, "I don't decide either if [the disclosure] is true or false. I gather just facts that they have said."

Assuming without deciding that Espinoza preserved this complaint for our review[2], we find that the trial court did not abuse its discretion by admitting the forensic interviewer's testimony. The challenged testimony was limited to the forensic interviewer's observations of Ally and Abby's demeanor and to categorizing their disclosure stage based on those observations. She made clear that she was not assessing the truthfulness or credibility of any statements or allegations made by the children she interviewed.

Accordingly, we overrule Espinoza's first issue.

## Extraneous Offense Evidence

In his second issue, Espinoza argues that the trial court erroneously admitted extraneous-offense evidence in violation of Texas Rule of Evidence 404(b) and article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37. We disagree.

---

[2] Though the State does not address waiver of this complaint, we note that trial counsel did not object to improper testimony about Ally and Abby's truthfulness. Trial counsel's objection was to the forensic interviewer's testimony as a possible outcry witness. He stated, "if they [are] going to answer about the behaviors and all those things, basically talking about an outcry witness, and I will have an objection." *See* TEX. R. APP. P. 33.1(a)(1); *Pena v. State,* 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). Further, even if his objection could be fairly interpreted as an objection to improper testimony on truthfulness, we note that trial counsel failed to obtain a ruling on his objection. *See* TEX. R. APP. P. 33.1(a)(2).

STANDARD OF REVIEW

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Id.*

DISCUSSION

In this issue, Espinoza challenges the trial court's admission of Detective Bean's testimony about "other possible victims" and Juana's testimony that Espinoza touched her breasts on a date not listed in the indictment.

Detective Bean's Testimony

Espinoza's first extraneous-offense complaint focuses on the following exchange between the State and Detective Bean:

[The State]: Did [Juana] provide you any information that allows [sic] you to further your investigation?

[Detective Bean]: Actually both her and [Rosalinda] provided me with information -- or with the names of other possible victims.

[The State]: Okay. And what did you do with that information?

[Detective Bean]: I located those victims, and some of them were interviewed at the sheriff's department, and other ones received forensic interviews.

[The State]: And were there any potential alleged victims that you were not able to contact?

[Detective Bean]: Yes, ma'am.

[The State]: And who were they?

[Defense Counsel]: Objection to relevance and under 403. The prosecutor is trying to bring some bad acts, evidence of bad acts. People who are not here. My client is not charged with anything.

[The State]: We're not getting into any specifics of any bad acts, just that there were names provided.

[Defense Counsel]: About other -- allegedly other victims. Not -- that are not here, that are not part of this case.

[Court]: Overruled.

[Detective Bean]: Can you restate the question? Sorry.

[The State]: So you were provided with names of other potential victims?

[Detective Bean]: Yes.

[The State]: That were not interviewed. Correct?

[Detective Bean]: Yes, ma'am.

Espinoza claims this testimony constitutes extraneous-offense evidence because use of the term "victims" implied that he committed a criminal offense.

We first note that an objection must be made as soon as the grounds for the objection become apparent. *See* TEX. R. APP. P. 33.1(a)(1); *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). Detective Bean made multiple statements about other possible victims before defense counsel

objected. Espinoza thus failed to preserve his complaint about Detective Bean's testimony for review. *See id.*

Nonetheless, we find that Detective Bean's testimony did not constitute extraneous-offense evidence. To qualify as an extraneous offense, the evidence must necessarily show a crime or bad act and that the defendant was connected to it. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 849, 114 S. Ct. 146, 126 L. Ed. 2d 108 (1993). If the evidence does not show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. *McKay v. State,* 707 S.W.2d 23, 32 (Tex. Crim. App. 1985), *cert. denied,* 479 U.S. 871, 107 S. Ct. 239, 93 L.Ed.2d 164 (1986). Detective Bean's challenged testimony generally references whether other individuals, who were "potential" or "possible" victims, were located and interviewed. He did not identify any bad act or criminal offense these unnamed individuals may have been victims of, if any, and he did not attribute any bad act or criminal offense to Espinoza through this testimony. Thus, the trial court did not abuse its discretion by admitting this testimony as alleged by Espinoza.

Juana's Testimony

Count Nine of the indictment alleges that Espinoza touched Juana's breasts on or about January 1, 2008. Juana would have been thirteen years

old on the date alleged in the indictment. In his second sub-issue, Espinoza argues that the trial court reversibly erred by permitting Juana to testify to an incident of Espinoza touching her breasts when she was in the third grade, which would have been several years before the date alleged in the indictment. He notes that the State failed to include this incident in its notice of intent to offer extraneous offenses.

However, "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Juana testified without objection from trial counsel that Espinoza touched her breasts weekly from the time she was in third grade through ninth grade. She also testified without objection that when she was in the third grade, Espinoza would suck her breasts. Any error in admitting Juana's initial testimony about Espinoza touching her breasts when she was in third grade was cured because the same evidence was admitted elsewhere without objection. *See id.*

Accordingly, we overrule Espinoza's second issue.

## Sufficiency of the Evidence

In his third, fourth, and fifth issues, Espinoza challenges the sufficiency of the evidence supporting his convictions in count eight and counts ten

through sixteen. He does not challenge the sufficiency of the evidence to support his convictions in counts one, six, seven, or nine.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of

all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

ISSUE #3: COUNTS THIRTEEN, FOURTEEN, FIFTEEN, AND SIXTEEN – ABBY

Counts thirteen through sixteen of the indictment allege that Espinoza sexually abused Abby on or about January 1, 2019. Abby was fifteen years old at the time. Espinoza argues that the evidence is insufficient to support these convictions because "*[e]very fact* related to the offenses alleged did not come from Abby but her agreement to the prosecutor's leading questions." He also argues that Abby's testimony was not credible, chiefly because Abby's father testified that Abby did not report Espinoza's sexual abuse to him, which contradicted Abby's testimony that she told her father about the abuse.

Texas Rule of Evidence 611 does not forbid the asking of leading questions of a party's own witness; rather, it states that leading questions "should not be used on direct examination except as necessary to develop the witness's testimony." TEX. R. EVID. 611(c). We note that trial counsel did not object to the State's use of leading questions throughout Abby's testimony. *See* TEX. R. APP. P. 33.1(a). Further, though Abby was an adult by the time this case was tried, it is apparent from the record that she was reluctant to testify and that leading questions were necessary to develop her testimony.[3] Leading questions may be used on direct examination to develop the testimony of a reluctant witness. *See Rodriguez v. State*, 997 S.W.2d 640, 643 (Tex. App.—Corpus Christi-Edinburg 1999, no pet.).

Abby testified that she moved into the home her aunt shared with Espinoza when she was thirteen years old, and that she had been living in the home for approximately a month and a half when Espinoza started doing "bad things." Abby explained that the "bad things" occurred many times "[s]ince the time that I arrived here until the time that they arrested him" in 2021.

Count thirteen alleges that Espinoza committed the offense of indecency with a child by sexual contact by touching Abby's breasts with the intent to

---

[3] The record reflects that Abby was reluctant to look at Espinoza and identify him for the record. Further, when the State began to ask about the "bad things" Espinoza did to her, Abby asked if she could "take a little time." After a recess in the proceedings, a victim's advocate was permitted to sit near Abby to support her during her testimony.

arouse or gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1). Abby testified that Espinoza would touch her "[e]very day." The State asked Abby if Espinoza touched her breasts over her clothes or under her clothes, and Abby clarified that he touched her breasts under her clothes and that he "always did that." Further, on cross-examination, defense counsel asked, "So, you're saying that [Espinoza] entered your room and touch[ed] your breasts. Right?" Abby responded, "Yes."

Count fourteen alleges that Espinoza committed the offense of sexual assault of a child by penetrating Abby's sexual organ with his finger. *See id.* at § 22.011(a)(2)(A). When the State asked if Espinoza touched her "private part," Abby said, "Yes." She testified that he touched her private part "[w]ith his fingers," "[u]nder the clothes," on the "[i]nside," and "[m]any times."

Count fifteen alleges that Espinoza committed the offense of sexual assault of a child by penetrating Abby's mouth with his sexual organ. *See id.* at § 22.011(a)(2)(B). Count sixteen alleges that Espinoza committed the offense of indecency with a child by exposing his genitals knowing that Abby was present and with the intent to arouse or gratify his sexual desire. *See id.* at § 21.11(a)(2)(A). The following relevant exchange occurred at trial:

[The State]: Did he ever show you his private part?

[Abby]: Yes.

[The State]: Did he ever masturbate in front of you?

[Abby]: Yes.

[The State]: How many time - - or did he show you his private part one time or multiple times?

[Abby]: Many times.

[The State]: Did he masturbate in front of you one time or many times?

[Abby]: Many times.

[The State]: Did he ever have you touch his private part?

[Abby]: Yes.

[The State]: Was this one time or many times?

[Abby]: Many times.

[The State]: With what part of your body did he have you touch his private part?

[Abby]: My hands.

[The State] Did he ever put his private part inside of your mouth?

[Abby]: How so?

[The State]: Did he ever ask you to put his penis in your mouth?

[Abby]: Yes.

[The State]: Did that happen one time or multiple times?

[Abby]: Many times.

[The State]: When he would do all of these things, would he say something to you?

[Abby]: He would say to me "You are so pretty," and "You're getting prettier."

[The State]: I'm sorry. I need to clarify something. He asked you to put his penis in your mouth many times is what you said. Right?

[Abby]: Yes.

[The State]: Did he also make you put his penis in your mouth?

[Abby]: Yes.

[The State]: And did that happen one time or many times?

[Abby]: Many times.

Further, on cross-examination, Abby agreed with defense counsel that Espinoza "showed her 'his privates' in her room "[e]ach day."

Abby's father testified that he shared a bedroom with Abby during the relevant timeframe. He indicated that Abby never stayed alone in the house with Espinoza and that it was not possible for Espinoza to have been in their bedroom every day with Abby. He also advised that Abby never told him anything about the abuse and that she never showed any signs that made him believe she had been abused.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Brooks,* 323 S.W.3d at 899. As the reviewing court, we "should not substantially intrude

upon the jury's role" in making these determinations. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Here, by finding Espinoza guilty, the jury obviously believed Abby's testimony over the conflicting testimony from her father. Moreover, a victim's testimony alone is sufficient to support a conviction for sexual assault of a child and indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07.

Considering all of the evidence in the light most favorable to the verdicts, we find that a rational jury could have found the essential elements of the crimes alleged in counts thirteen, fourteen, fifteen, and sixteen beyond a reasonable doubt.

Accordingly, we overrule Espinoza's third issue on appeal.

ISSUE #4: COUNT EIGHT – JUANA

Count eight in the indictment alleges that on or about January 1, 2008, Espinoza committed the offense of indecency with a child by exposing his genitals with the intent to arouse or gratify his sexual desire, knowing that Juana, who was thirteen years old at the time, was present. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A). Espinoza contends that no evidence was offered at trial demonstrating his awareness of Juana's presence. Specifically, Espinoza isolates Juana's testimony that "[Espinoza] would play [pornography] when I would walk by, but he would turn it off" to argue that he

was initially unaware of Juana's presence and changed his behavior once he became aware of her.

Juana testified that beginning in her third-grade year, Espinoza would play pornography when she walked by, pull his pants down, and masturbate himself. She confirmed that this continued "[a]t least weekly" and that she would see his penis whenever he did this. Juana explained that Espinoza began masturbating more often when she was in the sixth grade, describing how Espinoza "would pee in the bathroom, and the mirrors would be angled and, like, if I walked by, he would touch himself." When asked if this might be "incidental," Juana clarified that Espinoza would open the bathroom door if he heard her voice. Amy offered similar testimony, corroborating Juana's description of Espinoza positioning bathroom mirrors in such a way that she could see him "touching himself" when she walked by.

Considering all of the evidence under the appropriate standard, we find the evidence was sufficient to prove beyond a reasonable doubt that Espinoza exposed his genitals with the intent to arouse or gratify his sexual desire knowing Juana was present.

Accordingly, we overrule Espinoza's fourth issue.

ISSUE # 5: COUNT TEN – AMY; COUNTS ELEVEN AND TWELVE – ALLY

Amy and Ally are sisters. Espinoza's sufficiency challenges to counts ten through twelve are based on Amy's lack of detailed memory about circumstances surrounding the offense alleged in count ten, and on the testimony from Amy and Ally's mother contradicting their allegations.

Count ten of the indictment alleges that on or about January 1, 2008, Espinoza committed the offense of indecency with a child by causing Amy to touch Espinoza's genitals with the intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(2). Amy would have been five years old on the date alleged. At trial, Amy testified that when she was about five years old, Espinoza "paid me to touch him." When the prosecutor asked Amy to clarify where Espinoza made her touch him, she stated, "He made me touch him on his genitals." Amy further clarified that his genitals were exposed when she touched him. Amy could not recall certain details about this incident, such as what time of year it occurred, how much Espinoza paid her to touch his genitals, or what she said to Espinoza that day.

Count eleven of the indictment alleges that on or about January 1, 2015, Espinoza committed the offense of indecency with a child by touching the breasts of Ally with the intent to arouse or gratify his sexual desire. *See id.* at § 21.11(a)(1), (c)(1). Count twelve of the indictment alleges that on or about

the same date, with the intent to arouse or gratify his sexual desire, Espinoza exposed his genitals knowing that Ally was present. *See id.* at (a)(2)(A). Ally was ten years old on the date alleged for each offense. At trial, Ally testified that Espinoza sexually abused her from the time she was in second grade until she was in seventh grade. She affirmed that Espinoza touched her breasts with his hands and mouth multiple times per week. Ally explained that Espinoza would sometimes offer her money to engage in sexual activity with him. She affirmed that Espinoza exposed his genitals to her "a lot" beginning when she was in second grade and that he would often masturbate in front of her.

At trial, Amy and Ally's mother testified that that it was impossible for Espinoza to have abused the girls daily as alleged. She explained that she stayed in the same room with Amy and Ally, that neither Amy nor Ally told her about Espinoza allegedly sexually abusing them, and that she had not observed signs from either of the girls indicating they had been abused.

We defer to the jury's determination of witness credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. We further presume that the jury resolved any conflicting evidence in favor of the verdict, and we defer to that resolution. *Merritt*, 368 S.W.3d at 525. Considering the evidence in the light most favorable to the verdict, we find that a rational jury could

have found the elements of each challenged offense beyond a reasonable doubt. The evidence was sufficient to support Espinoza's convictions in counts ten, eleven, and twelve.

Accordingly, we overrule Espinoza's fifth issue.

## Fines

Espinoza's sixth through seventeenth issues address the trial court's assessment of a $100 fine in each written judgment of conviction. He argues that we must strike each of the $100 fines because they were not orally pronounced at sentencing. The State agrees that we should strike the $100 fine in count six, but argues that the remaining judgments should be modified to reclassify the $100 fine as a court cost.

RELEVANT LAW

A defendant's sentence must be pronounced orally in his presence. TEX. CODE CRIM. PROC. ANN. art. 42.03 § 1(a); *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). A fine is a part of the defendant's sentence and therefore must be orally pronounced. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). "[T]he judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement." *Madding*, 70 S.W.3d at 135. When a conflict between the written judgment and the oral pronouncement of the sentence exists, the oral

pronouncement controls. *Id.* "The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003).

DISCUSSION

The trial court assessed the complained-of $100 fines pursuant to article 102.0186 of the Texas Code of Criminal Procedure, known as the "Child Abuse Prevention Fine." *See* TEX. CODE CRIM. PROC. ANN. art. 102.0186. Before January 1, 2020, article 102.0186 classified this $100 fee as a court cost. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.127(a), 2005 Tex. Gen. Laws 621, 684 (amended 2007, 2019) (current version at TEX. CODE CRIM. PROC. ANN. art. 102.0186); *see Ingram v. State*, 503 S.W.3d 745, 749 (Tex. App.—Fort Worth 2016, pet. ref'd). The "Cost Act," which became effective on January 1, 2020, amended article 102.0186 to reclassify this $100 fee as a fine. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 2.40, 5.01, 5.04, 2019 Tex. Gen. Laws 3981, 4006, 4035; *See Rhodes v. State*, 712 S.W.3d 226, 234 (Tex. App.—Eastland 2025, no pet. h.). The Cost Act's "Transition and Effective Date" provides:

> SECTION 5.01. Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act

is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 5.01, 2019 Tex. Gen. Laws 3982, 4035-36.

Relying on this provision, the State argues that "the date of offense controls which version of [article 102.0186] is applicable to a judgment" and "[f]or offenses between January 1, 2005 and December 31, 2019, the child abuse prevention charge was a cost, not a fine." Excluding count six, Espinoza's offense dates occurred between January 1, 2008 through January 1, 2019.[4] Thus, the State argues that the prior version of article 102.0186 applies and that, excluding count six, we should modify the judgments of conviction to reclassify the $100 fine as a court cost.

Shortly after the parties filed their briefs in this appeal, the Court of Criminal Appeals issued its opinion in *Bradshaw v. State*, 707 S.W.3d 412 (Tex. Crim. App. 2024). In that case, the Court reconciled the Cost Act's "Transition and Effective Date" provision with the "Imposition of Court Costs in Criminal

---

[4] The dates of offense for each relevant count are as follows:
- Count One - January 1, 2012 through July 1, 2015;
- Count Six - May 4, 2003;
- Counts Seven, Eight, Nine, and Ten - January 1, 2008;
- Counts Eleven and Twelve - January 1, 2015; and,
- Counts Thirteen, Fourteen, Fifteen, and Sixteen - January 1, 2019.

Proceedings" statute found in Section 51.608 of the Texas Government Code. *Id.* at 416-420; *see* TEX. GOV'T CODE ANN. § 51.608; Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 5.01, 2019 Tex. Gen. Laws 3982, 4035-36. The "Imposition of Court Costs in Criminal Proceedings" statute provides:

> Notwithstanding any other law that establishes the amount of a court cost collected by the clerk of a district, county, or statutory county court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed, the amount of a court cost imposed on the defendant in a criminal proceeding must be the amount established under *the law in effect on the date the defendant is convicted of the offense.*

TEX. GOV'T CODE ANN. § 51.608 (emphasis added). Harmonizing these provisions, the Court ultimately determined that "anyone who committed an offense before 1/1/2020 but is convicted after 1/1/2020 … is subject to the current version of the Cost Act." *Bradshaw*, 707 S.W.3d at 418.

Although Espinoza committed each offense before January 1, 2020, he was convicted of each offense on January 12, 2024. Therefore, he is subject to the current version of the Cost Act. *See id.* The Cost Act classifies the $100 Child Abuse Prevention fee as a fine, not a court cost. TEX. CODE CRIM. PROC. ANN. art. 102.0186. Because the $100 Child Abuse Prevention Fine was not orally pronounced at sentencing, we agree with Espinoza that it was improperly included in the trial court's written judgments. *See Thompson*, 108 S.W.3d at 290.

Accordingly, Espinoza's sixth through seventeenth issues are sustained. We modify the written judgments in counts one, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, and sixteen to delete the $100 fine.

## Reimbursement Fees

In his eighteenth through twenty-ninth issues, Espinoza asserts that the trial court erred by assessing certain reimbursement fees in each written judgment of conviction. He offers three arguments supporting his claims: (1) the trial court failed to orally pronounce the reimbursement fees; (2) the record contains no explanation for the reimbursement fees, and (3) there exists no statutory authority for the trial court's assessment of the reimbursement fees. We address each argument in turn.

We first note that "if an assessed fee is in the nature of reimbursement or 'a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case,' then the assessed fee is not part of punishment and need not be orally pronounced." *Shircliff v. State*, 654 S.W.3d 788, 792 (Tex. App.—Waco 2022, no pet.) (citing *Smith v. State*, 640 S.W.3d 885, 885 (Tex. App.—Waco 2021, pet. ref'd) (Johnson, J. concurring)).

When Espinoza filed his brief, the only document in the appellate record designated as a "bill of costs" was a document indicating the cost for preparing the appellate record. The record did not contain a certified bill of costs

detailing the reimbursement fees assessed for any of his convictions. *See* TEX. CODE CRIM. PROC. ANN. art. 103.006 (requiring an officer of the court to certify and sign a bill of costs stating the costs that have accrued and to send it to the appellate court). Espinoza therefore argued in his brief that the record contained no explanation for the basis of the reimbursement fees because "[i]t was not discussed at trial and does not appear in the bill of costs." The trial court clerk, in response to the State's request, subsequently filed a supplemental clerk's record including a certified bill of costs for each judgment of conviction. *See Johnson v. State*, 423 S.W.3d 385, 392 (Tex. Crim. App. 2014) (permitting supplementation of the appellate record when a bill of costs has been omitted). Except for count six, each certified bill of costs includes a $50 fee for "Capias/Warrant by Peace Officer" and a $5 "Commitment Fee," totaling $55 in reimbursement fees. The bill of costs in count six includes a $5 "Commitment Fee" and a $5 "Arrest Fee," totaling $10 in reimbursement fees.

The challenged reimbursement fees in this appeal are governed by article 102.011 of the Texas Code of Criminal Procedure, which requires a defendant convicted of a felony or misdemeanor to pay certain fees to defray the costs of various services performed by peace officers. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011. As relevant here, article 102.011 authorizes the collection of the following fees:

(1) $5 for issuing a written notice to appear in court following the defendant's violation of a traffic law, municipal ordinance, or penal law of this state, or for making an arrest without a warrant;

(2) $50 for executing or processing an issued arrest warrant, capias, or capias pro fine, with the fee imposed for the services of:

(A) the law enforcement agency that executed the arrest warrant or capias, if the agency requests of the court, not later than the 15th day after the date of the execution of the arrest warrant or capias, the imposition of the fee on conviction; or

(B) the law enforcement agency that processed the arrest warrant or capias, if:

(i) the arrest warrant or capias was not executed; or

(ii) the executing law enforcement agency failed to request the fee within the period required by Paragraph A;

…

(6) $5 for commitment or release[.]

*Id.* at art. 102.011(a)(1), (a)(2), (a)(6).

The supplemental clerk's record provides support for the trial court's assessment of the reimbursement fees in each judgment of conviction. *See Johnson*, 423 S.W.3d at 392-96. Espinoza has not filed a reply brief or supplemented or amended his brief to raise any challenge to the correctness or

legality of any specific cost listed in the certified bills of cost.[5] *See* TEX. R. APP. P. 38.3, 38.7. We decline to undertake a review of the correctness of each cost charged in the bills of cost when Espinoza has not done so. *See Houston v. State*, 410 S.W.3d 475, 479-80 (Tex. App.—Fort Worth 2013, no pet.)(noting that "a variety of challenges are possible to any particular item of costs in any given case").

Accordingly, we overrule Espinoza's eighteenth through twenty-ninth issues.

## Conclusion

We sustain Espinoza's sixth through seventeenth issues and modify the judgments in counts one, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, and sixteen to delete the assessed $100 fine. Having overruled all of Espinoza's remaining issues, we affirm each of the judgments as modified.

STEVE SMITH
Justice

---

[5] To the extent that Espinoza may desire to challenge any specific item in the bills of costs for any of his convictions, article 103.008 of the Code of Criminal Procedure provides an avenue for those potential court-cost challenges. *See* TEX. CODE CRIM. PROC. ANN. art. 103.008.

OPINION DELIVERED and FILED:  July 24, 2025

Before Chief Justice Johnson,
        Justice Smith, and
        Justice Harris
Affirmed as modified
Do not publish
CRPM

